Present:  All the Justices

ALTA R. COOK, ET AL.

v.  Record No. 992710    OPINION BY JUSTICE ELIZABETH B. LACY
                                    November 3, 2000
RADFORD COMMUNITY HOSPITAL,
INCORPORATED, ET AL.

FROM THE CIRCUIT COURT OF THE CITY OF RADFORD
Duane E. Mink, Judge

In this appeal, we consider whether Code § 37.1-141 precludes the filing of an action by a person adjudged incapacitated and requires such action to be brought by the guardian of the incapacitated person.

On December 20, 1995, Alta R. Cook (Cook) was declared incapacitated pursuant to former Code § 37.1-132.[1]  Cook's husband, Donnie R. Cook, was appointed as her guardian.  On November 24, 1997, Cook, in her own name, filed a medical malpractice action against Radford Community Hospital, Incorporated, and Drs. Mark Todd and Robert C. Solomon for injuries she alleged resulted from treatment she received while a patient at the Hospital from November 24, 1995 to January 17, 1996.  She filed an amended motion for judgment in November 1998.  The defendants filed a joint motion to dismiss arguing that, because a guardian had been appointed for Cook, Code § 37.1-141 required that her guardian prosecute the

action.  Agreeing that Cook did not have standing to sue in her own right, the trial court determined that Cook was not entitled to amend her pleadings under either the misnomer statute, Code § 8.01-6, or the misjoinder statute, Code § 8.01-5, and dismissed Cook's motion for judgment.  Cook appeals from that judgment.

Cook acknowledges that pursuant to Code § 37.1-141, a fiduciary "should prosecute actions for his ward." Nevertheless, she maintains that the failure to comply with the statute does not preclude pleading amendments to cure any defects.

Code § 37.1-141 provides:

> All actions or suits to which the ward is a
> party at the time of qualification of the
> fiduciary and all such actions or suits
> subsequently instituted shall, subject to any
> conditions or limitations set forth in the
> order appointing him, be prosecuted or
> defended, as the case may be, by the fiduciary,
> after ten days' notice of the pendency thereof,
> which notice shall be given by the clerk of the
> court in which the same are pending.

The use of the word "shall" indicates that prosecution of a ward's cause of action by the fiduciary, if one has been

---

[1] Code § 37.1-132, addressing incapacity, was repealed by Acts 1997, c. 921, effective January 1, 1998.  For the current version of the statute, see Code § 37.1-134.13.

appointed, is mandatory.[2]  Failure to comply with a mandatory

condition can preclude curative amendments.

"Shall," however, does not always impose a mandatory

condition.  It has been construed as permissive or directory

rather than mandatory depending on the subject matter and

context in which it is used.  White v. Morano, 249 Va. 27, 32,

452 S.E.2d 856, 859 (1995); Fox v. Custis, 236 Va. 69, 77, 372

S.E.2d 373, 377 (1988).  To determine whether "shall" as used

in Code § 37.1-141 is mandatory or permissive, we will review

the history of the statute and relevant case law.

No statute specifically required that claims of a ward be

prosecuted by a fiduciary until 1950.  However, as early as

1872, this Court in Bird's Committee v. Bird, 62 Va. (21

Gratt.) 712 (1872), stated that "when there is a committee,

. . . every suit respecting the person or estate of the

lunatic must be instituted in his name."  Id. at 716.  In that

case, a person of unsound mind filed an action by next friend

against her former committee over the settlement of accounts.

Because of the factual situation involved, the Court in Bird's

Committee allowed the case to proceed by carving out a narrow

---

[2] The statutes and case law addressed in this opinion use
the terms guardian, committee, and fiduciary depending upon
the ward's particular disability.  For purposes of construing
Code § 37.1-141, unless the context requires otherwise, we use
the general term "fiduciary" to refer to the person who has
been charged with the care of a ward.

exception to the general rule:  "[W]herever the interests of the committee clash with those of the lunatic, or when no committee has ever been appointed, the lunatic should be permitted to institute a suit in his or her own name, with some responsible person named as next friend and approved by the court."  Id. at 718.

In Cole's Committee v. Cole's Adm'r, 69 Va. (28 Gratt.) 365 (1877), a proceeding instituted in the name of a person of unsound mind was challenged because it was not brought by the fiduciary.  Again, this Court allowed the action to proceed, finding that the action was "substantially a suit by the committee" because it was styled in the name of the person of unsound mind, suing "by his next friend and committee."  Id. at 370-71.

By 1934, "the established rule" was that suits against persons declared insane must be brought in the name of the committee and that adults " 'who are incapable of acting for themselves, though neither idiot nor lunatic, have been permitted to sue by their next friend.' "  Counts v. Counts, 161 Va. 768, 777, 172 S.E. 248, 251 (1934).  This rule was premised on the policy that an " 'insane person, whether plaintiff or defendant, cannot appear in these judicial proceedings alone and unprotected; he must sue or defend by

4

guardian, guardian <u>ad</u> <u>litem</u>, or committee.' "  161 Va. at 775, 172 S.E. at 250.

In 1950, the General Assembly enacted Code § 37-149, the predecessor to Code § 37.1-141, directing that actions or suits to which a ward is a party "shall" be prosecuted or defended by the fiduciary once one has qualified.  By this statute, the General Assembly adopted the established rule recognized in <u>Bird's Committee</u>, <u>Cole's Committee</u>, and <u>Counts</u>. That rule was not permissive; it was mandatory.

The conclusion that Code § 37.1-141 is mandatory also finds support when that section is contrasted with Code § 37.1-139 and its predecessors.  Well before the enactment of Code § 37.1-141, the predecessors of Code § 37.1-139 stated that a fiduciary "may sue and be sued" with respect to claims for or against the ward.  <u>See</u> Code 1950, § 37-147; Code 1919, § 1054; Code 1887, § 1702; Code 1849, tit. 24, ch. 85 § 45. By using the word "shall" rather than "may" in the new statute, the General Assembly distinguished the new section from the long-standing provisions recited in current Code § 37.1-139 as well as enacting into statute the mandatory common law rule adopted in <u>Bird's Committee</u>, <u>Cole's Committee</u>, and <u>Counts</u>.

Cook advances a number of arguments in support of her position that a suit which does not comply with the provisions

5

of Code § 37.1-141 is nevertheless valid.  First, she argues that the difference between a declaration of incapacity and of incompetency is a "major and material" difference which requires a different outcome in this case.  We agree that incapacity and incompetency represent different disabilities, but that difference is not material for the purposes of this suit.  The statute at issue in this case does not distinguish between the types of disabilities, but applies when any fiduciary has been appointed for a ward, regardless of the particular disability suffered by the ward.  Therefore, whether the disability is incompetency or incapacity, the issue remains the same if a fiduciary has been appointed.

Cook next argues that the policy underlying Code § 8.01-9 requires that she be granted leave to amend her petition in this case.  Code § 8.01-9 requires the appointment of a guardian ad litem for a person under a disability who is named as a defendant in a suit unless the person under a disability is represented by counsel.  Code § 8.01-9 further provides that it is the duty of the court to "see that the interest of [such] defendant is so represented and protected."  Cook posits that this section recognizes that a suit filed against a person with disabilities rather than against the guardian is valid and curative amendments can be made if necessary.  Based on this premise, Cook reasons that the converse must also be

6

true; that is, a suit filed by a person under a disability is also valid and subject to curative action if needed to protect and represent the interest of such person.  We disagree.

Code § 8.01-9 is inapposite to the issue in this case. That section is a general law applying to all persons under a disability, which includes minors, alcoholics, drug addicts, incarcerated felons, as well as incapacitated persons.  The statute is not concerned with the capacity of a person under a disability to sue but with the protection of such person when named as a defendant in a lawsuit.  One who institutes litigation is in a posture completely different than one against whom suit is filed.  The filing of a lawsuit is an affirmative act on the part of a plaintiff and does not carry with it the need for the type of court-initiated protection which may exist when a person with a disability is required to defend himself in litigation that he did not instigate, particularly if such person does not have a fiduciary.  The provisions of Code § 8.01-9 do not provide any basis for concluding that a suit by a person under a disability who has a duly appointed fiduciary is valid.

Finally, Cook cites a number of cases decided by this Court as examples of valid litigation filed by a person under a disability, all of which are distinguishable.  None of the

cases construes Code § 37.1-141 and in no case had a fiduciary been appointed for the person under a disability.

Dunn v. Terry, 216 Va. 234, 217 S.E.2d 849 (1975), involved the application of former Code §§ 53-305 and -307.[3] Former Code § 53-305 provided for the appointment of a committee for a convict. Former Code § 53-307 provided that all actions or suits to which a convict was a party "shall be prosecuted or defended" by "such committee," language which is very similar to Code § 37.1-141 at issue here.

Dunn, a convict, sought to quash a garnishment summons issued in connection with civil litigation which began prior to his incarceration. No committee had been appointed for Dunn and he proceeded in his own name. The Court in Dunn concluded that the appointment of a committee was neither automatic nor required because former Code § 53-305 provided that such appointment was made upon the "motion of any interested party." As an interested party, the convict had the ability to seek appointment of a committee. Conversely, the Court in Dunn concluded, the convict could waive the appointment of a committee by failing to make such a motion. As no such motion was made by Dunn or any other interested party, there was no "such committee" for purposes of former Code § 53-307, and, therefore, the provisions of that section

requiring "such committee" to prosecute or defend actions involving a convict were inapplicable. Thus, the Court in Dunn did not need to consider whether the use of the phrase "shall prosecute or defend" as used in former Code § 53-307 was mandatory or permissive. See also Cross v. Sundin, 222 Va. 37, 278 S.E.2d 805 (1981). The rationale of Dunn, which resulted in allowing a convict to maintain an action in his own name rather than by his committee, is not applicable here because of the statutory provision allowing waiver of a committee in that case and the material factual difference between the cases, that is, the absence of a previously appointed fiduciary in Dunn and the presence of one in the instant case.

Cook's reliance on Riddle v. Barksdale, 194 Va. 766, 75 S.E.2d 507 (1953), for the proposition that a minor's suit is valid even though he did not sue by next friend is also misplaced. In Riddle, a judgment in favor of a minor for personal injuries was sustained even though the minor did not sue by next friend because former Code § 8-487 provided that no judgment should be "arrested or reversed" so long as the minor appeared by an attorney and the judgment was in favor of the minor and not to his prejudice. 194 Va. at 770, 75 S.E.2d at 510.

---

[3] Now codified as Code §§ 53.1-221 and -222.

Finally, Cook refers to two cases involving the ability of a person under a disability to engage in actions with legal significance such as executing a will or deed; Gilmer v. Brown, 186 Va. 630, 44 S.E.2d 16 (1947), and Waddy v. Grimes, 154 Va. 615, 153 S.E. 807 (1930). The only act of legal significance at issue in this case is the ability to file a law suit. Whether Cook could execute a will or a deed while the guardianship remains effective is not relevant to the issue before us, and therefore these cases are inapposite.

For the reasons stated above, we conclude that if a fiduciary has been appointed for a ward, Code § 37.1-141 requires that the fiduciary prosecute any suit to which the ward is a party. In the absence of an exception, the ward does not have standing to sue in his or her own name.

Based on this construction of Code § 37.1-141, the trial court correctly refused to allow amendment of the pleadings to add or substitute Cook's guardian as the plaintiff. Neither Rule 1:8, relating to liberal leave to amend pleadings, nor Code § 8.01-5, relating to misjoinder and nonjoinder of parties, are applicable here. With regard to Rule 1:8, we stated in The Chesapeake House on the Bay, Inc. v. Virginia Nat'l Bank, 231 Va. 440, 442-43, 344 S.E.2d 913, 915 (1986):

> [T]he foregoing rule [Rule 1:8] has always been
> subject to the limitation that a new plaintiff
> may not be substituted for an original plaintiff

10

who lacked standing to bring the suit. Statutes relating to misjoinder and nonjoinder are not applicable in such situations, and the sole remedy is a nonsuit followed by a new action brought in the name of a proper plaintiff.

As in Chesapeake House, the guardian here cannot be substituted for Cook because Cook did not have standing to bring the suit.

Likewise Code § 8.01-6 is not applicable here. That statute permits amendment and relation back if the pleadings contain a misnomer. A misnomer "arises when the right person is incorrectly named, not where the wrong [person] is named." Swann v. Marks, 252 Va. 181, 184, 476 S.E.2d 170, 172 (1996). In this case the "right person" was Cook's guardian. The "right person" was not incorrectly named; the "wrong person," Cook, was named.

For the reasons stated, we will affirm the judgment of the trial court.

Affirmed.

11