PRESENT:  Lemons, C.J., Goodwyn, Mims, McClanahan, Powell, and Kelsey, JJ., and Lacy, S.J.

KENIA L. LOPEZ-ROSARIO

OPINION BY
v.  Record No. 150587                              JUSTICE S. BERNARD GOODWYN
April 14, 2016

CHRISTINE HABIB, ET AL.


FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
John M. Tran, Judge

In this appeal, we consider whether the circuit court erred in dismissing a suit for medical malpractice on the basis that the plaintiff filed the lawsuit in her own name, although co-guardians, responsible for her personal affairs, had been appointed.

BACKGROUND

Kenia L. Lopez-Rosario (Lopez-Rosario) is an adult with several physical and cognitive disabilities.  On May 13, 2010, Lopez-Rosario's parents, Kenia I.R. Lopez and Israel Lopez (collectively, parents) petitioned the Circuit Court of Loudoun County to appoint them as Lopez-Rosario's co-guardians.  The petition stated that Lopez-Rosario "is an incapacitated individual as defined by Virginia Code Ann. § 37.2-1000 and Article II Section 1 of the Constitution of Virginia."  It added that Lopez-Rosario requires extensive care on a daily basis and is cared for by her mother full time.

A psychologist's report filed with the petition stated, "Kenia functions at about the level of a six year old child.  Estimated intellectual functioning is in the range of mild mental retardation.  She cannot understand spoken speech, but can understand and communicate in ASL [(American Sign Language)], though at the level of a young child."  The report stated that Lopez-Rosario's "[cognitive] condition is permanent and expected to remain stable."

The circuit court held, and its order stated, that Lopez-Rosario's "best interests shall be met by appointing co-guardians for her personal decisions, including decisions relating to her health, safety, treatment and care." The circuit court deemed that she was "incapacitated and unable to care for her person and estate" and that her "incapacity is expected to be permanent." The court granted guardianship to the parents and in its order explained that "[t]he co-guardians shall be responsible for the personal affairs of Kenia L. Lopez-Rosario. The co-guardians shall have authority pursuant to § 37.2-1020 of the Code to make decisions regarding the support care, health, safety, habilitation, therapeutic treatment and residence of Kenia L. Lopez-Rosario." Further, the order stated, "all costs and fees incurred in connection with this proceeding are to be paid by Children's National Medical Center."[1]

Subsequently, Lopez-Rosario had surgery to remove her gallbladder. The surgeon, Christine Habib, M.D. (Dr. Habib), allegedly made an error that injured Lopez-Rosario. On March 7, 2014, Lopez-Rosario filed suit against Dr. Habib and her employer, Virginia Surgery Associates (collectively, defendants), alleging that Dr. Habib's negligence caused her injury. Lopez-Rosario filed suit in her own name and without indication that she was under a guardianship.

The defendants filed a plea in bar/motion to dismiss, arguing that because her parents had been appointed as her guardians, Lopez-Rosario could not file suit under her own name. Lopez-Rosario opposed the plea in bar/motion to dismiss, arguing that the guardianship was limited to medical decisions and did not include matters such as filing lawsuits.

---

[1] According to the report attached to the petition for appointment of guardians, the petition "arose from a requirement of NCMC [(Children's National Medical Center)] that someone have legal responsibility for making the decision to permit Kenia's recent orthopedic surgery. That situation was handled satisfactorily via a temporary guardianship, but, going forward, Kenia needs someone who can make any such decisions in the future."

2

The court granted the defendants' plea in bar/motion to dismiss because it deemed that Lopez-Rosario was "under a guardianship and does not have standing to file a lawsuit in her [own] name." Lopez-Rosario appeals.

ANALYSIS

Lopez-Rosario argues that the circuit court erred in ruling that she lacked standing to sue in her own name. She asserts that her parents' guardianship authority is limited to medical decisions and thus does not prevent her from filing a legal action in her own name.[2] The defendants respond that the circuit court's guardianship order deemed Lopez-Rosario incapacitated and mentally incompetent and gave the parents authority over Lopez-Rosario's "personal affairs," so the parents' guardianship over Lopez-Rosario included the authority to file a legal action on her behalf (legal decisions).

Lopez-Rosario agrees that if her parents' guardianship includes authority over her legal decisions, she did not have standing to file suit. This concession is consistent with and demonstrates an understanding of the applicable law.

If a fiduciary is appointed for a ward, the ward loses the ability to file suit in his or her own name. Code § 64.2-2025 states, in relevant part,

> Subject to any conditions or limitations set forth in the order appointing the fiduciary, the fiduciary shall prosecute or defend all actions or suits to which the incapacitated person is a party at the time of qualification of the fiduciary and all such actions or suits subsequently instituted after 10 days' notice of the pendency of the action or suit.

---

[2] At oral argument, Lopez-Rosario argued for the first time that although the parents may be her guardians, they were not her conservators, so they did not have authority to file suit. Lopez-Rosario did not raise this argument at trial. Therefore, we will not consider it on appeal. Rule 5:25.

3

Further, we held in <u>Cook v. Radford Community Hospital</u>, 260 Va. 443, 451, 536 S.E.2d 906, 910 (2000), that pursuant to a previous version of Code § 64.2-2025, "the ward does not have standing to sue in his or her own name" if a fiduciary has been appointed on his or her behalf. [3]

In <u>Cook</u>, we decided that a ward of a guardianship arrangement lacked standing to file suit, implying that a guardian was a fiduciary. <u>Id.</u> at 446-47 & n.2, 451, 536 S.E.2d at 907 & n.2, 910. Correspondingly, Code § 64.2-2019(A) provides that "[a] guardian stands in a fiduciary relationship to the incapacitated person for whom he was appointed guardian." Thus, a guardian is a fiduciary for purposes of Code § 64.2-2025.

In this case, the guardianship order appointed the parents as "co-guardians" of Lopez-Rosario. The term "Guardian" as used in the Code "means a person appointed by the court who is responsible for the personal affairs of an incapacitated person, including responsibility for making decisions regarding the person's support, care, health, safety, habilitation, education, therapeutic treatment, and, if not inconsistent with an order of involuntary admission, residence." Code § 64.2-2000.

However, Code § 64.2-2009 allows for the creation of a guardianship for a limited purpose. It states, in relevant part,

> A. The court's order appointing a guardian or conservator shall . . . (ii) define the powers and duties of the guardian or conservator so as to permit the incapacitated person to care for himself and manage property to the extent he is capable; . . . .
>
> B. The court may appoint a limited guardian for an incapacitated person who is capable of addressing some of the essential requirements for his care for the limited purpose of medical decision making, decisions about place of residency, or other specific decisions regarding his personal affairs. The court may appoint a limited conservator for an incapacitated person who is capable of

---

[3] <u>Cook</u> interpreted what was then Code § 37.1-141, which subsequently became Code § 37.2-1026. 2005 Acts ch. 716. Later the provision was recodified at Code § 64.2-2025. 2012 Acts ch. 614. Code § 64.2-2025 is substantively the same as former Code § 37.1-141.

managing some of his property and financial affairs for limited purposes that are specified in the order.

Thus, while the Code and our precedent in Cook show that the appointment of a guardian for the full range of statutory purposes removes from the ward the ability to file suit in his or her own name, it is possible for a guardianship to be limited in nature, such that the guardian does not have authority over legal decisions. Therefore, we must determine whether the circuit court erred in ruling that the parents' guardianship over Lopez-Rosario was as broad as the statutes authorize rather than being limited such that it did not provide the parents authority to make legal decisions on behalf of Lopez-Rosario.

Because there were no disputed facts relevant to the plea in bar/motion to dismiss and the circuit court's ruling was based on its interpretation of a guardianship order, a finding of law, we review the circuit court's decision de novo. Shevlin Smith v. McLaughlin, 289 Va. 241, 251, 769 S.E.2d 7, 12 (2012). Given that the psychologist's report states that the petition was filed to enable the parents to make medical decisions for Lopez-Rosario and that Children's National Medical Center paid the fees and costs associated with obtaining the guardianship order, it appears that the immediate purpose for filing for a guardianship was to enable Lopez-Rosario's parents to make medical decisions on her behalf. However, the language of the order is controlling in this case. See Temple v. Mary Washington Hospital, 288 Va. 134, 141, 762 S.E.2d 751, 754 (2014) ("This Court has stated on numerous occasions . . . . that trial courts speak only through their written orders and that such orders are presumed to reflect accurately what transpired.").

The circuit court's order states that Lopez-Rosario was "deemed incapacitated and unable to care for her person and estate" and that her "incapacity is expected to be permanent." It gave

5

the parents authority to make decisions for Lopez-Rosario regarding "support care, health, safety, habilitation, therapeutic treatment and residence of Kenia L. Lopez-Rosario."

Code § 64.2-2000 states that a "Guardian" is "responsible for the personal affairs of an incapacitated person, including responsibility for making decisions regarding the person's support, care, health, safety, habilitation, education, therapeutic treatment, and, if not inconsistent with an order of involuntary admission, residence." The guardianship order noted Lopez-Rosario's incapacity and gave the parents authority in each area listed in the definition of "Guardian" under Code § 64.2-2000.[4] The order did not specify any limitations on the parents' guardianship, effectively granting them all of the authority that a court may vest in a guardian. Thus, the parents are Lopez-Rosario's full guardians, not limited ones.

As guardians, the parents were Lopez-Rosario's fiduciaries. Code § 64.2-2019(A). Thus, pursuant to Code § 64.2-2025, the parents had the authority and obligation to prosecute lawsuits on Lopez-Rosario's behalf. Therefore, in accordance with our prior decision in Cook, 260 Va. at 451, 536 S.E.2d at 910, Lopez-Rosario lacked standing to file suit in her own name.

---

[4] The only potential area of distinction between the statutory definition of the decision-making responsibilities of a full guardian and those assigned in the guardianship order is that Code § 64.2-2000 gives a guardian authority over "support" and "care" of the ward with the two consecutive terms being separated by a comma, and the guardianship order omits the comma between those words and thus states that the parents are responsible for decisions regarding "support care." The term "support care" was not found in dictionaries reviewed by this Court. It appears that the order sought to track Code § 64.2-2000, and that the circuit court made a clerical error by omitting the comma between "support" and "care." At oral argument, Lopez-Rosario's counsel commented that the distinction "looks like a typographical error." Thus, we consider there to be no distinction between the duties listed in the guardianship order and those listed in the definition of "Guardian" in Code § 64.2-2000.

CONCLUSION

In summary, for the reasons stated, we affirm the judgment of the circuit court granting

the plea in bar/motion to dismiss on the basis that Lopez-Rosario lacked standing to file this suit

Affirmed.